■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX HERNANDEZ, Appellant. [950 NYS2d 268]—Judgment, Supreme Court, New York County (Edward J. McLaughlin, J.), rendered November 29, 2007, as amended December 17, 2007, convicting defendant, upon his plea of guilty, of sexual abuse in the first degree, and sentencing him, as a second violent felony offender, to a term of five years, and order, same court and Justice, entered on or about July 8, 2011, which denied defendant's CPL 440.10 motion to vacate the judgment, affirmed.

Saxe, J.P., and Sweeny, J., concur in a separate memorandum by Sweeny, J., as follows: The "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (*Hill v Lockhart*, 474 US 52, 56 [1985] [internal quotation marks omitted]). A defendant challenging the propriety of his guilty plea on the ground of ineffective assistance of counsel must meet the two-prong test set out in *Strickland v Washington* (466 US 668 [1984]). Under *Strickland*, the "defendant must show that counsel's performance was deficient," and "that the deficient performance prejudiced the defense" (*Strickland*, 466 US at 687).

In *Padilla v Kentucky* (559 US —, 130 S Ct 1473 [2010]), the Supreme Court held that, in connection with a plea, effective assistance requires the defense counsel to advise a defendant of the immigration consequences of his plea. This was plainly not

properly done in this case and the hearing court correctly determined that the first prong of the *Strickland* test had been met.

However, contrary to the dissent's contention, defendant did not establish that he was prejudiced by his counsel's inadequate advice on the deportation consequences of his guilty plea (*see id.*). After an evidentiary hearing, the court properly determined that defendant did not demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (*Hill v Lockhart* at 59). The dissent accepts defendant's testimony on its face that, had he been advised that he would be deported, he would have rejected the promised sentence of five years and insisted on going to trial, knowing that his sentence exposure would be 14 years. However, the hearing court, which observed all the witnesses, found defendant's testimony, not only in this regard, but overall, to be incredible. Defendant's statements to the immigration authorities that he was unjustly convicted and that he did not commit the crime to which he pleaded guilty were found by the hearing court to undermine defendant's truthfulness. His claims that he did not understand the terms "trial," "sexual contact" or "oath" were found to be additional examples of defendant's lack of candor. The record amply supports the hearing court's conclusion that defendant decided to accept the plea, not because he was defectively advised on the immigration issue, but rather because pleading guilty was the course most advantageous to him. It has been a long-established rule that "great deference must be paid to the findings of fact and determinations of credibility by a hearing court" (*People v Rivera*, 213 AD2d 281, 281-282 [1995], *lv denied* 86 NY2d 740 [1995], citing *People v Prochilo*, 41 NY2d 759, 761 [1977]; *see also People v Hickson*, 165 AD2d 777 [1990]). We find no reason on the record before us for disturbing the court's credibility determinations. We find it unnecessary to decide any issues relating to the retroactivity of *Padilla v Kentucky*.

Manzanet-Daniels, J., concurs in a separate memorandum as follows: The motion court's assessment that defendant was not prejudiced by counsel's *Strickland* violation was eminently sound and amply supported by the record evidence, which showed defendant to be utterly disingenuous and dishonest when discussing both this case and his prior convictions.

The defense's assertion that there were "clear gaps in [defendant's] understanding" of the charges against him is refuted by the record before us. Defendant admitted that he understood the accusation against him was that he had tried to rape his

sister-in-law, yet nonetheless claims that when he pleaded guilty he was operating under the erroneous belief that merely grabbing the victim and pushing her out of the door constituted "sexual contact."

Defendant's claim that he did not understand the meaning of sexual contact, and that he was under a misapprehension that "sexual contact" encompassed any contact with a woman, defies common sense and the record evidence. The motion court astutely observed that defendant's definition of sexual contact was "positively Clintonesque" in the "redefining for self-interest of commonly understood human and sexual and legal principles." At the time of the assault, defendant had lived in the United States for 16 years. His claim that "just touching a woman" amounted to sexual conduct punishable by a five-year sentence is palpably ridiculous. If this were the case, just shaking a woman's hand, without her consent, would consign the offender to a state prison sentence.*

The dissent points to defendant's testimony that he was motivated by anger, not sexual desire. However, one motivated solely by anger generally does not "grab[ ] [someone] between her pants and her blouse" in order to eject her from the premises.

Defendant was not prejudiced for the further reason that he had been adjudicated a violent predicate felon for a second-degree assault conviction in connection with an attack upon his brother-in-law, as a result of which he was eligible for deportation regardless of the disposition of the instant case. During the course of the prior assault, he pushed his brother-in-law into a stove, punched him in the face, choked him and smashed his head into the wall. He claimed that he "had" to plead guilty in the prior case, despite the fact that he was purportedly defending himself and had a defense to the crime with which he had been charged. I would accordingly affirm the order appealed from.

Moskowitz and Freedman, JJ., dissent in a memorandum by Freedman, J., as follows: I would vacate defendant's plea and thus his conviction because he was deprived of his constitutional right to the effective assistance of counsel. Contrary to the majority, I believe defendant demonstrated that he was prejudiced by his attorney's failure to advise him that a guilty plea would automatically cause him to be deported (see *Padilla v Kentucky*,

---

* The term "sexual abuse" would have been translated in Spanish by the official court interpreter as "abuso sexual," so no plausible argument can be made that defendant was under a misapprehension as to the meaning of the terms or its connotations.

559 US —, 130 S Ct 1473 [2010]; *Strickland v Washington*, 466 US 668 [1984]).

Defendant Felix Hernandez was born in the Dominican Republic in 1969. He attended a technical school in that country and graduated as an electrician. In 1990, defendant moved to Puerto Rico and, three years later, married his first wife. The couple had two sons, born in 1993 and 1994, but defendant's wife died giving birth to the second child. Defendant and his sons thereafter moved to New York, and in 1997 he obtained permanent residency (green card status) in the United States. Defendant married Virginia Hernandez, with whom he had four more children, born in 1996, 1999, 2001, and 2003.

On December 19, 2006, defendant's sister-in-law, Celeste Hernandez, reported to the police that, while she was sleeping on the couch in defendant's apartment on the previous night, she was awakened by defendant's nonconsensual sexual contact with her. In February 2007, police officers investigating the incident contacted defendant and brought him with his consent to a precinct station for questioning. After defendant received *Miranda* warnings, he gave oral and written statements to the police about the incident. Thereafter the police arrested defendant. In March 2007, he was indicted for attempted rape in the first degree, two counts of sexual abuse in the first degree, and attempted sexual abuse in the first degree. The attempted rape charge carried a minimum prison term of seven years and a maximum term of 15 years.

Defendant moved to suppress his pre-arrest statements, and Supreme Court held a *Huntley* hearing on November 7, 2007. Defendant was provided a Spanish language interpreter. In the morning session, the People questioned police officer John Savino of the Manhattan Special Victims Squad about the circumstances surrounding defendant's oral statement and its substance. According to Savino, defendant acknowledged that, before the December 2006 incident, he had become "annoyed" with Celeste Hernandez when he learned that, while he was visiting Puerto Rico earlier in the month, she had brought a man to the apartment and left him alone with his wife. After learning that, defendant did not see Celeste until he came home on the evening of December 18 and found her asleep on his couch. Defendant admitted to shaking Celeste to wake her because he wanted to talk to her, but otherwise his statement was exculpatory.

The court recessed for lunch, after which the examination of Savino was to continue. However, when the hearing resumed, defendant's attorney Mr. Schioppi informed the court that de-

fendant wished to plead guilty to sexual abuse in the first degree in full satisfaction of the indictment. The court then questioned defendant with the aid of the Spanish interpreter. When defendant was asked whether he had "committed the crime of sexual abuse, in that you subjected Celeste Hernandez to what's known as sexual contact as New York defines that," defendant answered "[y]es." The court also asked defendant whether his attorney had "explained to you your various legal rights and your options with regards to this case," to which the defendant also answered "[y]es," but the court did not specifically ask defendant if counsel had advised him about the immigration consequences of his plea. Finally, the court stated, "I have no idea what any federal immigration situation would be as a result, if any, of this conviction, but I am suppose[d] to tell you that as well."

On November 29, 2007, the court sentenced defendant to a determinate prison sentence of five years, followed by five years of postrelease supervision. Thereafter, federal immigration authorities initiated deportation proceedings against defendant while he was incarcerated. Following a hearing on July 18, 2008, at which defendant appeared pro se by video, the United States Immigration Court ordered that defendant be deported to the Dominican Republic because of his conviction for first-degree sexual abuse, which the Immigration Court found was an aggravated felony that mandated removal. During the hearing, defendant proclaimed his innocence and protested that he didn't want to leave the United States because he wanted to be with his children.

In March 2011, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction, claiming his Sixth Amendment right to counsel had been violated by his attorney's failure to apprise him that a plea to first-degree sexual abuse would cause his deportation. In an affidavit, defendant stated that he neither knew nor had been advised of the immigration consequences of his plea. Defendant further stated that he would not have pleaded guilty if he had known he would be deported because his motive for taking the plea was to reunite with his children as soon as possible. Since defendant's incarceration, his two oldest children had been living with his sister, but the remaining four had been removed from their mother's care and placed in separate foster homes. Defendant stated that his paramount concern was to reunite his family under a single roof and resume his role as his children's father.

In June 2011, a hearing was held on defendant's motion. Mr. Schioppi, who defendant called as his first witness, testified

that he remembered representing defendant but did not recall whether he had advised defendant about the consequences that his guilty plea could have on his immigration status. Mr. Schioppi added that he believed that he had not advised defendant about the matter because he had never practiced immigration law and it was not his practice to discuss immigration consequences with a client "[u]nless the issue arose at some point during the proceedings." Defense counsel on the CPL 440.10 motion, however, stipulated that Mr. Schioppi had previously told her that his practice at the time was to inform noncitizens with "green cards" that pleading guilty to a felony "could be used for deportation purposes."

Defendant, testifying with the aid of the interpreter, recounted his family history. He acknowledged that, before his guilty plea in 2007, he had pleaded guilty to assault in the second degree in connection with a fight with his brother-in-law, Christopher Hernandez, in 2001. Defendant contended that Christopher had started the fight and that he had acted in self-defense. He had pleaded guilty and not claimed self-defense because his attorney had advised him he would not have to go to jail and would only receive probation.

Defendant then described the encounter with Celeste Hernandez on the evening of December 18, 2006. His account at the hearing largely agreed with his pre-arrest statement to the police, except that he testified that Celeste was already awake when he first saw her in his apartment. Defendant acknowledged physical contact with Celeste but stated that he was motivated by anger, not sexual desire. Defendant testified that he was angry with Celeste for taking a man to his apartment and leaving him alone there with his wife, and after he told her to leave and she "talked back" to him, he grabbed her "between her pants and her blouse" and forcibly moved her towards the front door to eject her. When defendant let go, Celeste left the apartment. Defendant denied Celeste's allegations that he had touched her vagina and breasts, pulled down her pants, and tried to rape her. He denied that he touched Celeste for sexual gratification.

When defendant pleaded guilty, he continued, he mistakenly thought that any physical contact with a person of the opposite sex without consent was "sexual contact," and accordingly he stated during the allocution that he had made sexual contact. After he was incarcerated, however, other inmates explained to him what the court had meant by the term. Defendant further testified that he accepted the plea bargain of five years' imprisonment because he thought the court had told him he

would definitely be sentenced to 15 years if he was convicted after a trial. Since the immigration authorities had not taken any action against him after his assault conviction, defendant wrongly believed that his status as a permanent resident insulated him from deportation. Defendant maintained that, had he known his guilty plea would lead to his deportation, he would not have pleaded guilty and would have gone to trial even though he risked a 15-year sentence if convicted.

Defendant averred that some of the things he had said during the allocution were untrue, but stated that Mr. Schioppi had instructed him to respond affirmatively to all of the court's questions. He did not understand the rights he was giving up because his attorney failed to explain those rights. When he pleaded, defendant did not understand that he was giving up his right to a trial because he understood "trial" to mean "the judge's order was going to be executed."

Defendant's eldest son, Felix Hernandez, Jr., also testified on his behalf. Felix, Jr. verified that his father was very involved and caring, and attended his school activities, took him shopping, and took him to church. While defendant was incarcerated, he corresponded with Felix, Jr. and periodically telephoned him.

In July 2011, the hearing court denied the CPL 440.10 motion in a decision on the record that was supplemented by a brief written decision. The court applied the two-prong standard for ineffective assistance of counsel established in *Strickland v Washington* (466 US 668 [1984], *supra*), which requires a defendant to show both attorney error and prejudice flowing from that error (*id.* at 687). The court held that defendant satisfied the first prong by showing that he was inadequately warned during plea bargaining that his conviction for first-degree sexual abuse would automatically cause his deportation. The court found that Mr. Schioppi spoke to defendant about whether the immigration consequences of his plea could affect his immigration status but counsel did not clearly inform defendant that he would certainly be deported. Further, the hearing court did not believe that its own warning corrected the problem that Mr. Schioppi's vague advice created.

However, the hearing court found that defendant had failed to satisfy the second prong of *Strickland* by showing a reasonable probability that if he had been properly warned, he would not have pleaded guilty (*see Padilla v Kentucky*, 559 US —, 130 S Ct 1473 [2010], *supra*; *Hill v Lockhart*, 474 US 52, 59 [1985]). The court rejected defendant's testimony as incredible in the context of what the court viewed as "all of the false statements

that defendant made during this hearing." According to the court, the rationale for defendant's plea was that he believed that if he went to trial "[c]onviction . . . was a certainty" and he would be sentenced to "significantly" more than five years' imprisonment.

The court found that the timing of the plea was significant because, in its opinion, "something clearly changed" during the lunchtime break at the *Huntley* hearing. The court speculated that, until the hearing began, defendant hoped that Celeste Hernandez would not appear to testify against him at trial. It further speculated that defendant knew he would be deported "irrespective of anything else" and that his choice was limited to either going to trial, being convicted, and serving "about 14 years" before he was deported, or pleading guilty and serving five years before he was deported. According to the court, defendant realized that his children were "not going to be in his life as he would [have liked] them to be." After observing defendant and his son testify, the court did not believe that "family fealty" would lead defendant to choose incarceration for 14 years so he could have "periodic interactions" with his children before he was deported. Despite defendant's testimony that the federal government did not take any action against him after his assault conviction, the court rejected as incredible defendant's claim that he believed he was immune from deportation because of his permanent residence status.

When deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel under the Sixth Amendment (*Strickland v Washington*, 466 US at 686; *McMann v Richardson*, 397 US 759, 771 [1970]). To establish ineffective assistance, a defendant must first show that counsel's performance fell below "an objective standard of reasonableness" (*Strickland*, 466 US at 688). Where deportation is a clear consequence of a guilty plea, an attorney's failure to advise his or her client of that consequence satisfies the first *Strickland* prong (*Padilla v Kentucky*, 559 US at —, 130 S Ct at 1484).

The second *Strickland* prong requires a defendant to show that he or she was prejudiced by the ineffective assistance of counsel by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" (*Strickland*, 466 US at 694). In the case of plea bargains, the central issue is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process" (*Hill v Lockhart*, 474 US at 59).

Unlike the majority, I would find that defendant's testimony demonstrated that he was prejudiced, thus satisfying the second prong of the *Strickland* test. Defendant maintained that he was unaware of the immigration consequences when he pleaded guilty, and he took the plea because he thought doing so was the best way to minimize his separation from his six children. Defendant further testified that, if he had known that his plea would automatically cause him to be deported and indefinitely separated from his family, he would have proceeded to trial.

The hearing court's rejection of defendant's testimony about his motive for pleading guilty was not supported by the evidence adduced at the motion hearing. Instead, the hearing court constructed a scenario that was premised on unwarranted speculation that the timing of defendant's plea was highly significant, that defendant thought he was sure to be convicted if he went to trial, and that defendant knew he would be deported if he were convicted. As for the timing, the court surmised that defendant pleaded after the lunch break for the *Huntley* hearing because he somehow learned during the break that, despite family pressure, Celeste Hernandez would testify against him. In fact, the People had provided defendant with a list of witnesses that included Celeste before the hearing, and no evidence supports the court's belief that it was ever in doubt that Celeste would testify or that anyone had ever pressured her not to testify.

The court further surmised that, when defendant learned that Celeste would testify, defendant reassessed his chances at trial and concluded that he was certain to be convicted. However, the court's finding that defendant believed he would be convicted is not based on the record, and seemingly reflected the court's own, unsubstantiated evaluation of the strength of the case against him. The court assumed that defendant would have been convicted if he had gone to trial, but the evidence against him was not overwhelming. Celeste Hernandez, the complainant, was the People's main witness, and the outcome of the case would largely have depended on the jury's evaluation of the complainant's and defendant's credibility. Virginia Hernandez, defendant's wife, was listed on the People's witness list, but she did not observe the incident leading to the charges. Defendant's eight-year-old daughter, who was sleeping on the couch next to Celeste during the incident, was also listed as a witness, but the substance of her testimony was uncertain, as was the weight that a jury would accord to it. There was no corroborating physical evidence.

Finally, the court surmised that, when defendant pleaded

guilty during the *Huntley* hearing, he already knew he would be automatically deported although his counsel had not advised him of that fact. In reaching that conclusion, the court rejected defendant's testimony that he wrongly believed that he could not be deported because of his permanent resident status. However, defendant's testimony is supported by the authorities' failure to bring deportation proceedings against him after he pleaded guilty to a felony assault. Based on defendant's personal experience, it was entirely plausible that he would wrongly believe that he was immune from deportation and that his guilty plea would not have immigration consequences. Moreover, defendant, who was proceeding as a poor person, had a limited education, and was not proficient in English, could not be expected to be familiar with immigration law or to have sought advice from an immigration attorney.

In sum, defendant adduced evidence at the hearing that he was the sole provider for and primary caretaker of his six children. He further maintained that, out of concern for his children, he would not have pleaded guilty had he known that he would be automatically deported. Instead, defendant would have risked a 15-year sentence rather than face being separated from them indefinitely. Since defendant demonstrated that there was a reasonable probability that his counsel's ineffective assistance affected his decision to plead guilty (*see Hill*, 474 US at 59), his plea should be vacated and this case should be remanded for trial.